Edward G. Martin and Stella Martin v. Commissioner.
Martin v. Commissioner
Docket No. 66224.
United States Tax Court
T.C. Memo 1959-107; 1959 Tax Ct. Memo LEXIS 137; 18 T.C.M. (CCH) 479; T.C.M. (RIA) 59107; May 26, 1959
E. Willard Murnane, Esq., 1106 Commerce Building, St. Paul, Minn., for the petitioners. Sylvan Siegler, Esq., for the respondent. TURNER
Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against the petitioners for the taxable year 1952 in the amount of $4,143.86. The question for decision is whether the proceeds from the sale of the capital stock of a corporation may be reported on the installment basis, under the provisions of section 44(b) of the Internal Revenue Code of 1939. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioners are husband and wife and are residents of White Bear Lake, Minnesota. They filed their joint income tax return for *138 the taxable year involved with the district director of internal revenue for Minnesota. They kept their books and filed their returns on a cash basis. For an undisclosed period prior to December 1, 1952, petitioners owned 20 shares of stock of the White Bear Wine & Liquor Shop, Inc., hereafter referred to as the corporation. This stock constituted all of the issued and outstanding stock of the corporation. The corporation was engaged in the retail business of selling wine, liquor, beer and related merchandise. It conducted its business in a building owned by petitioner Stella Martin, which it rented under a written lease, at a monthly rental of $100. Prior to May 31, 1952, the termination date of its lease, it requested that it be permitted to make certain improvements to the building. An agreement was reached with Stella providing for a method of payment for the proposed improvements. This agreement was incorporated in a new lease executed on May 1, 1952, which was for a term of ten years, commencing on June 1, 1952. The new lease provided for monthly rental payments of $150, and as to payment for the improvements, provided as follows: "It is understood and agreed that in consideration *139 of the Lessees [Lessee] making improvements to the said real estate, that fifty ($50.00) dollars of the said rental agreement shall be applied to the cost of said improvement and shall continue until the said improvement cost has been fully paid. "It is further agreed that the Lessee shall provide the Lessor with an itemized statement of the cost of said improvement and upon approval by the Lessor, prior to the 1st day of June, 1952, a deduction of fifty ($50.00) dollars per month shall be made until the total amount is fully paid, and should the sum of fifty ($50.00) dollars be inadequate, it shall then be amortized over the ten (10) year period and any funds or money expended by the said Lessee for the improvement of said premises shall be without interest." The proposed improvements to the building were made in 1952, at an approximate cost of $3,500. On June 12, 1952, the corporation borrowed $3,500 from the First State Bank of White Bear Lake, to pay for the improvements, and on that date issued to the bank its promissory note in that amount. The note bore interest at the rate of 4 1/2 per cent per annum, payable semiannually, with the principal due on or before September 12, 1952. Thereafter *140 the corporation issued a new promissory note to the bank, also in the amount of $3,500. This new note was executed on September 12, 1952, and bore interest at the rate of 5 per cent per annum, payable semi-annually, with the principal amount due on or before December 12, 1952. Except for date of execution, due date and interest rate, the two promissory notes were identical in every material respect. Upon execution of the second note, the first note was canceled. On December 1, 1952, the petitioners entered into a contract with Stanley T. Wiatros and Joseph J. Wiatros and Delores R. Wiatros, husband and wife, to sell their 20 shares of stock of the corporation. The agreement provided in part as follows: "THIS AGREEMENT, made and entered into this 1st day of December, 1952, by and between, Edward G. Martin and Stella Martin, husband and wife, of White Bear Lake, Minnesota, hereafter referred to as Sellers and Stanley T. Wiatros and Joseph J. Wiatros and Delores R. Wiatros, husband and wife, hereafter referred to as Purchasers: "WHEREAS, Edward G. Martin and Stella Martin are owners of all of the issued and outstanding stock of the corporation known as, White Bear Lake Wine and *141 Liquor Shop, Inc., and are desirous of selling said stock to the Purchasers and to place the management and control and operation of said corporation in the hands of said Purchasers and "WHEREAS, said corporation is engaged in the retail sale of wine, liquors and beer and other related stock of merchandise and it is the desire of all parties to continue said corporation in active business, and "WHEREAS, said sale will involve a part payment of cash and the balance in installment payments and it is the desire of the parties hereto to properly secure the Sellers until said Sellers shall be paid in full the price as set forth herein, "NOW, THEREFORE, in consideration of the mutual promises herein made to be kept and performed by each of the parties hereto it is agreed between the parties as follows: "1. Sellers grant, bargain, sell and convey unto the Purchasers their heirs, administrators and assigns forever 20 shares of the capital stock of the White Bear Lake Wine and Liquor Shop, Inc., a Minnesota corporation, to have and to hold the same forever. Sellers for themselves, their heirs, executors and assigns covenant and agree to and with the Purchasers their heirs and assigns *142 that they are the lawful owners of said stock and have good right to sell the same and that the same are free from all encumbrances of any nature and kind and that Sellers will warrant and defend the sale of said stock to Purchasers their heirs, executors, administrators and assigns, against all or every person or persons whomsoever lawfully claiming or to claim the whole or any part thereof. "2. The selling price of said stock shall be the sum of Thirty Thousand Eight Hundred Ninety-One and 41/100 ($30,891.41) Dollars. This amount has been arrived at by establishing a figure of Eighteen Thousand and No/100 ($18,000.00) Dollars to represent the value of the fixtures and furnishings, leashold [leasehold] and good will and the further sum of Twelve Thousand Three Hundred Thirty-Three and 82/100 ($12,333.82) Dollars as representing the present value of the inventory of saleable merchandise, an amount of Two Thousand and No/100 ($2,000.00) Dollars representing petty cash, and the amount of Two Thousand Thirty-Seven and 59/100 ($2,037.59) Dollars as the value of the accounts receivable over the value of the accounts payable. In addition thereto Edward G. Martin shall satisfy an outstanding *143 obligation of said corporation for improvements to the front of the leashold [leasehold] building in the amount of Thirty-Five Hundred and No/100 ($3500.00) Dollars. Payments shall be made to the Sellers at their home in White Bear Lake or such other place as shall be agreed upon by the parties in the amount of Ten Thousand and No/100 ($10,000.00) Dollars upon the execution of this Agreement and the balance of Twenty Thousand Eight Hundred Ninety-One and 41/100 ($20,891.41) Dollars shall be paid at the rate of Two Hundred Fifty and No/100 ($250.00) Dollars or more per month beginning January 1, 1953, and monthly thereafter in amounts not less than Two Hundred Fifty and No/100 ($250.00) Dollars until the full amount of the unpaid balance together with interest at the rate of 5% per annum shall be paid in full. It is understood and agreed that payment shall first be applied to interest which has accrued and the balance to the principle indebtedness." As of the date of sale, the petitioners' basis for the stock was $2,000. They incurred $700 in selling expenses. On or about December 1, 1952, the purchasers issued their check for $10,000 to the petitioners as a down payment on the *144 purchase price of the stock. On December 10, 1952, the corporation, through Stanley T. Wiatros, its new president, and Delores R. Wiatros, its new secretary-treasurer, issued its promissory note to Stella in the face amount of $3,500. The note, which bore interest at the rate of 4 1/2 per cent per annum, payable annually, provided for monthly payments of $50, payable on the 10th of each month, the first payment to be due on December 10, 1952. Two days later, on December 12, 1952, Edward issued his personal check to the First State Bank of White Bear Lake in full payment of the amount due under the promissory note dated September 12, 1952. Subsequent to December 1, 1952, the corporation continued to occupy the building owned by Stella pursuant to the terms of the lease executed on May 1, 1952. It continued to make monthly payments of $150 to Stella, as provided for by the lease, and $50 of this was applied to the corporation's indebtedness to Stella under the promissory note dated December 10, 1952. One payment was made in December 1952, and as of the end of 1952, $3,450 remained due on this note. Petitioners reported the gain from the sale of their stock on their 1952 return on the *145 installment basis. In his determination of deficiency, the respondent determined that the initial payment received in the year of the sale exceeded 30 per cent of the selling price, and therefore the petitioners were not entitled to report their gain from the sale of the stock on the installment basis. Opinion The sole question submitted for decision is whether the petitioners received more than 30 per cent of the selling price of certain corporate stock as an initial payment, so as to preclude the application of section 44(b) of the Internal Revenue Code of 1939, [1] which permits the reporting of proceeds from certain casual sales of personalty on an installment basis. *146 The respondent contends that the selling price was $30,891.41 and the initial payment $10,000, which is more than 30 per cent of the selling price. The petitioners contend that the selling price was $34,391.41 and the initial payment $6,500, or, at most, $10,000; in either event, less than 30 per cent of the selling price. The petitioners entered into an agreement for the sale of their stock, which recited a selling price of $30,891.41. The selling price provided in the agreement was arrived at by assigning certain values to corporate assets in the total amount of $34,371.41, which amount was reduced by an outstanding corporate liability to the First State Bank of White Bear Lake in the amount of $3,500. [2] The down payment was $10,000 in cash, to be followed by monthly payments of $250, until a balance of $20,891.41, plus interest at the rate of 5 per cent, had been paid in full. The $10,000 was paid on or about December 1, 1952, the date of the contract. On December 10, 1952, the *147 corporation issued its promissory note to Stella for $3,500, which was the amount of its note to the bank for the money which had been expended for the improvements on the leased property. Two days later, Edward, pursuant to the contract agreement, issued his personal check for $3,500 in satisfaction of the corporation's note to the bank. While the sales agreement itself makes no mention of any obligation on the part of the corporation to issue a note to Stella, we are convinced by the evidence of record that this was intended as an element of the overall transaction covering the sale of the stock, the leasing of the property from Stella and the satisfaction of the indebtedness to the bank, and resulted in the substitution of Stella as the payee on the note in place of the bank. The note to Stella was in the same amount as the prior note to the bank, which was satisfied by Edward, and was to be paid off in the same way - $50 of the $150 monthly payment due to Stella under the existing lease was to be applied to the liability under the note. The record clearly indicates that the issuance of the corporation's note to Stella was in consideration for Edward's expenditure in satisfaction *148 of the corporation's liability on the note held by the bank, and was intended to substitute Stella as creditor of the corporation in place of the bank. [3] We are accordingly of the view that the satisfaction of the corporate liability to the bank and the issuance by the corporation of its note to Stella was a transaction which washed itself out, that the consideration passing was separate and apart from that passing in the sale and purchase of the stock, and had no effect on either the selling price of the stock or the initial payment therefor. By agreement of the parties to the sale, the stock was sold for $30,891.41, which was the total amount of consideration received by the petitioners for their stock, and thus constituted the selling price of the stock within the meaning of section 44(b). The initial payment thereon was $10,000, and being in excess of 30 per cent of the selling price, the petitioners *149 are not entitled to report the gain on the sale of the stock on the installment basis. Decision will be entered for the respondent. Footnotes
1. SEC. 44. INSTALLMENT BASIS. * * *
(b) Sales of Realty and Casual Sales of Personality [Personalty]. - In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.↩
2. The $20 difference between the total asset value as listed in the contract of sale, less the outstanding liability of $3,500, and the selling price, is explained by petitioners as a typographical error.↩
3. In both their opening statement and on brief, petitioners gave as the reason for substituting Stella for the bank as creditor of the corporation that the purchasers of the stock were unknown to the bank and the bank was no longer willing to carry the note of the corporation.↩